# EXHIBIT 1

# First Amended Answer of
# St. Paul Mercury Insurance Company

THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTTRADE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| v. | ) | 4:09-cv-01855-SNLJ |
| | ) | |
| THE ST. PAUL MERCURY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED ANSWER OF DEFENDANT
ST. PAUL MERCURY INSURANCE COMPANY**

Defendant St. Paul Mercury Insurance Company, sued herein as The St. Paul Mercury

Insurance Company, by its attorneys Niemann Rourke, LLC, as and for its Answer to the

Plaintiff Scottrade, Inc.'s ("Scottrade") Complaint, sets forth, upon information and belief, as

follows:

**AS AND FOR A RESPONSE TO THOSE ALLEGATIONS
DENOMINATED "THE PARTIES"**

1.      St. Paul Mercury Insurance Company denies knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph numbered "1" of the

Complaint.

2.      St. Paul Mercury Insurance Company (referred to in this Answer from this point

on as "Travelers") admits the allegations set forth in paragraph numbered "2" of the Complaint.

3.      Travelers denies the allegations set forth in paragraph numbered "3" of the

Complaint, except admits that Travelers is engaged in "the insurance business", it is a registered

foreign corporation with the Missouri Secretary of State, conducts business within the State of Missouri, and issued certain insurance policies to Scottrade.

4.      The allegations contained in paragraph numbered "4" of the Complaint constitute legal conclusions as to which no response is required.  To the extent that a response is required, Travelers respectfully refers this question of law to the Court.

## AS AND FOR A RESPONSE TO THOSE ALLEGATIONS
## DENOMINATED "JURISDICTION AND VENUE"

5.      Travelers admits that this Court has subject matter jurisdiction over this lawsuit, by reason of diversity of citizenship under 28 U.S.C. § 1332(a).

6.      The allegations contained in paragraph numbered "6" of the Complaint constitute legal conclusions as to which no response is required.  To the extent that a response is required, Travelers admits that this Court has jurisdiction over Travelers in this action, but denies that the statutes cited by Plaintiff are the basis of this jurisdiction.

## AS AND FOR A RESPONSE TO THOSE ALLEGATIONS
## DENOMINATED "FACTUAL BACKGROUND"

7.      Travelers admits that venue is proper in this District, and otherwise denies the allegations contained in paragraph numbered "7" of the Complaint.

8.      Travelers denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "8" of the Complaint, except admits that Scottrade is a broker and dealer in securities.

9.      To the extent that the allegations contained in paragraph numbered "9" of the Complaint constitute legal conclusions, no response is required.  To the extent that a response is required, Travelers denies knowledge or information sufficient to form a belief as to the truth of these allegations.

10.     Travelers denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "10" of the Complaint.

11.     Travelers denies the allegations contained in paragraph numbered "11" of the Complaint, but admits that it issues insurance policies and bonds to securities brokers and dealers.

12.     Travelers denies the allegations contained in paragraph numbered "12" of the Complaint, but admits that it provides insurance policies denominated "Financial Institution Bonds", with different coverage elements, to securities brokers and dealers.

13.     Travelers denies the allegations contained in paragraph numbered "13" of the Complaint, but admits that it issued:

(a)     Financial Institution Bond, Standard Form No. 14, Revised to October 14, 1987, Bond No. 491PB0727 to Scottrade, Inc, as Named Insured, with a Bond Period of November 1, 2005 to November 1, 2006 (the "2005-2006 Bond");

(b)     Financial Institution Bond, Standard Form No. 14, Revised to October 14, 1987, Bond No. 491PB0727 to Scottrade, Inc, as Named Insured, with a Bond Period of November 1, 2006 to November 1, 2007 (the "2006-2007 Bond" or "the Bond"); and

(c)     Financial Institution Bond, Standard Form No. 14, Revised to October 14, 1987, Bond No.  485PB0540 to Scottrade, Inc, as Named Insured, with a Bond Period of November 1, 2007 to September 30, 2008 (the "2007-2008 Bond");

All three bonds, each of which speaks for itself, collectively, will be referred to by Travelers in this Answer as "the Bonds"; the 2006-2007 Bond will be referred to here as "the Bond"; where a specific provision is identical in each of the three bonds, such provision will be referred to as a provision of "the Bonds"; the Court is respectfully

3

referred to the Bonds, their Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders, for the content thereof.   Travelers further admits that Scottrade paid premiums billed for the Bonds.

## AS AND FOR A RESPONSE TO THOSE ALLEGATIONS DENOMINATED "THE INSURANCE CONTRACT"

14.     Travelers denies the allegations contained in paragraph numbered "14" of the Complaint, except admits that the 2005-2006 Bond, the 2006-2007 Bond, and the 2007-2008 Bond each reflects the contract of insurance for the specified period between Travelers and Scottrade, each Bond contains a "Computer Systems Fraud" Rider, subject to the Bonds' Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders, and further admits that Scottrade purports to annex a true copy of the 2006-2007 Bond (previously identified, "the Bond") as an exhibit to the Complaint.

15.     Travelers denies the allegations contained in paragraph numbered "15" of the Complaint, except admits that the Bonds provide, as relevant here:

> The Underwriter, in consideration of an agreed premium, and subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations and other terms hereof, agrees to indemnify the Insured for:

*        *        *

It is agreed that:

1. The attached bond is amended by adding an Insuring Agreement as follows:

COMPUTER SYSTEMS FRAUD

Loss resulting directly from a fraudulent

(1) entry of Electronic Data or Computer Program into, or

(2) change of Electronic Data or Computer Program within

4

any Computer System operated by the Insured, whether owned or leased; or any Computer System identified in the application for this bond; or a Computer System first used by the Insured during the Bond Period, as provided by General Agreement B of this bond;

provided that the entry or change causes

(i)  Property to be transferred, paid or delivered,

(ii) an account of the Insured, or of its customer to be added, deleted, debited or credited, or

(iii)   an unauthorized account or a fictitious account to be debited or credited.

In this Insuring Agreement, fraudulent entry or change shall include such entry or change made by an Employee of the Insured acting in good faith on an instruction from a software contractor who has a written agreement with the Insured to design, implement or service programs for a Computer System covered by this Insuring Agreement.

2. In addition to the Conditions and Limitations in the bond, the following, applicable to the Computer Systems Fraud Insuring Agreement, are added:

## DEFINITIONS

(A) Computer Program means a set of related electronic instructions which direct the operations and functions of a computer or devices connected to it which enable the computer or devices to receive, process, store or send Electronic Data;

(B) Computer System means

(1) computers with related peripheral components, including storage components wherever located,

(2) systems and applications software,

(3) terminal devices, and

(4) related communications networks

by which Electronic Data are electronically collected, transmitted, processed, stored and retrieved;

5

(C) Electronic Data means facts or information converted to a form usable in a Computer System by Computer Programs, and which is stored on magnetic tapes or disks, or optical storage disks or other bulk media.

## EXCLUSIONS

(A) loss resulting directly or indirectly from the assumption of liability by the Insured by contract unless the liability arises from a loss covered by the Computer Systems Fraud Insuring Agreement and would be imposed on the Insured regardless of the existence of the contract:

(B) loss resulting directly or indirectly from negotiable instruments, securities, documents or other written instruments which bear a forged signature, or are counterfeit, altered or otherwise fraudulent and which are used as source documentation in the preparation of Electronic Data or manually keyed into a data terminal;

(C) loss resulting directly or indirectly from

(1) mechanical failure, faulty construction, error in design, latent defect, fire, wear or tear, gradual deterioration, electrical disturbance or electrical surge which affects a Computer System, or

(2) failure or breakdown of electronic data processing media, or

(3) error omission in programming or processing;

(D) loss resulting directly or indirectly from the input of Electronic Data into a Computer System terminal device either on the premises of a customer of the Insured or under the control of such a customer by a person who had authorized access to the customer's authentication mechanism;

(E) loss resulting directly or indirectly from the theft of confidential information.

## SERIES OF LOSSES

All loss or series of losses involving the fraudulent acts of one individual, or involving fraudulent acts in which one individual is implicated, whether or not that individual is specifically identified, shall be treated as a Single Loss and subject to the Single Loss Limit of Liability. A series of losses involving unidentified individuals but arising from the same method of operation shall

be deemed to involve the same individual and in that event shall be treated as a Single Loss and subject to the Single Loss Liability.

\*       \*       \*

4.      This rider becomes effective as of 12:01 a.m. on 11/01/2006

[Bond, as modified by Rider MEL0338 Ed. 12-01 (Amend Representation of Insured), and Rider SR6196 Adopted 12-93 (Computer Systems Fraud Insuring Agreement)]

16.     Travelers denies the allegations contained in paragraph numbered "16" of the Complaint, but admits that Plaintiff purports to quote a portion of the "Computer Systems Fraud" Rider of the Bonds. The entire text of the Rider relevant here, subject to the Bonds' Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders, is set out above in response to the allegations contained in paragraph numbered "15."

17.     Travelers denies the allegations contained in paragraph numbered "17" of the Complaint, except admits that the Bonds provide in Conditions and Limitations, Discovery, Section 3, subject to each Bond's Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders, in part: "This bond applies to loss discovered by the Insured during the Bond Period."

18.     Travelers denies the allegations contained in paragraph numbered "18" of the Complaint, except admits that Plaintiff paid premiums for each of the Bonds.

### AS AND FOR A RESPONSE TO THOSE ALLEGATIONS
### DENOMINATED "SCOTTRADE'S LOSS AND ITS REPORTS THEREOF"

19.     Travelers denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "19" of the Complaint.

20.     Travelers denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "20" of the Complaint.

21.    Travelers denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "21" of the Complaint.

22.    Travelers denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "22" of the Complaint.

23.    Travelers denies the allegations contained in paragraph numbered "23" of the Complaint, except admits that the Single Loss Deductible, as set forth in the Bond, is $250,000, subject to the Bond's Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders.

24.    Travelers denies the allegations contained in paragraph numbered "24" of the Complaint, except admits that Plaintiff, by written communication dated August 24, 2007, advised Travelers of a possible loss under one or more of the Bonds, and refers the Court to such communication for its content.

25.    Travelers denies the allegations contained in paragraph numbered "25" of the Complaint, and refers the Court to the Bond, Conditions and Limitations Section 5, Notice/Proof – Legal Proceedings Against Underwriter, which, as amended by rider, sets forth certain requirements for notice and proof of loss, subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders of the Bond, and refers the Court to the other Bonds in their entirety as may be relevant.

26.     Travelers denies the allegations contained in paragraph numbered "26" of the Complaint, except admits that Plaintiff provided to Travelers a document entitled Proof of Loss, dated February 11, 2008, along with certain other documents.

27.    Travelers denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "27" of the Complaint, except to the

8

extent that these allegations here refer to allegations set out above in the Complaint, in which case Travelers incorporates here its prior responses to such allegations.

28.     Travelers denies the allegations contained in paragraph numbered "28" of the Complaint, and refers the Court to the document entitled "Proof of Loss" submitted by Plaintiff to Travelers for its content.

29.     Travelers denies the allegations contained in paragraph numbered "29" of the Complaint, excepts admits that it timely acknowledged receipt of the document entitled Proof of Loss submitted by Plaintiff, along with accompanying documents, and that Travelers provided Plaintiff with a written declination of the claim following Travelers' completion of its investigation and review of the claim submitted, and the issues present in the claim.

30.     Travelers denies the allegations contained in paragraph numbered "30" of the Complaint, except admits that there were discussions and communications between Travelers and Plaintiff in connection with Plaintiff's submission of the claim, during Travelers' investigation and review of the claim submitted, and the issues present in the claim.

31.     Travelers denies the allegations contained in paragraph numbered "31" of the Complaint, but admits that it agreed with Scottrade on or about September 26, 2008, to a tolling agreement on the suit limitations period to expire at the later of January 31, 2009, or 120 days after receipt of Travelers' final written coverage determination.

32.     Travelers denies the allegations contained in paragraph numbered "32" of the Complaint, except admits that it requested documents and information from the Plaintiff as part of its investigation and review of the claim submitted, and the issues present in the claim.

33.     Travelers denies the allegations contained in paragraph numbered "33" of the Complaint, but admits that it requested the Plaintiff to keep Travelers apprised of developments affecting Plaintiff's claim.

34.     Travelers denies the allegations contained in paragraph numbered "34" of the Complaint, except admits that there were communications between Travelers and Plaintiff in the course of Travelers' investigation and review of the claim submitted.

35.     Travelers denies the allegations contained in paragraph numbered "35" of the Complaint, but admits that it received a binder entitled Scottrade Computer System Fraud Insurance Claim, Prepared June 18, 2009 (the "Supplemental Binder").

36.     Travelers denies the allegations contained in paragraph numbered "36" of the Complaint, refers the Court to the Supplemental Binder for its content, without admitting the accuracy or completeness of the contents of the Supplemental Binder; except admits solely that Plaintiff has alleged that it has sustained a loss totaling $13.8 million, and denies that Travelers is liable to Plaintiff under the Bond for any such loss.

37.     Travelers denies the allegations contained in paragraph numbered "37" of the Complaint.

38.     Travelers denies the allegations contained in paragraph numbered "38" of the Complaint.

39.     Travelers denies the allegations contained in paragraph numbered "39" of the Complaint, but admits that it received the Supplemental Binder from the Plaintiff, and reviewed that document as part of its investigation and review of the claim presented.

### AS AND FOR A RESPONSE TO THOSE ALLEGATIONS
### DENOMINATED "TRAVELERS' RESPONSE TO SCOTTRADE'S CLAIM"

40.     Travelers denies the allegations contained in paragraph numbered "40" of the Complaint, but admits that following Scottrade's notice to Travelers under the Bond, there were communications between Travelers and Scottrade as part of Travelers' investigation and review of the claim submitted, and the issues present in the claim.

41.     Travelers denies the allegations contained in paragraph numbered "41" of the Complaint, but admits that it agreed with Scottrade on or about September 26, 2008, to a tolling agreement on the suit limitations period to expire at the later of January 31, 2009, or 120 days after receipt of Travelers' final written coverage determination.

42.     Travelers denies the allegations contained in paragraph numbered "42" of the Complaint, except admits that following its investigation and review of the claim submitted by Scottrade, Travelers determined that it was not liable under the Bond(s) for Plaintiff's claim, and notified Plaintiff of that determination by letter dated September 14, 2009.

43.     Travelers denies the allegations contained in paragraph numbered "43" of the Complaint.

44.     Travelers denies the allegations contained in paragraph numbered "44" of the Complaint.

### AS AND FOR A RESPONSE TO THOSE ALLEGATIONS
### DENOMINATED "COUNT I – BREACH OF CONTRACT"

45.     Travelers repeats and realleges its responses to paragraphs numbered 1 through and including 44 as if each response was set out in full in this paragraph.

46.     The allegations set forth in paragraph numbered "46" of the Complaint constitute legal conclusions as to which no response is required.  To the extent a response is required, Travelers admits that each of the Bonds constituted a separate valid contract between Travelers and Scottrade.

47.     Travelers denies the allegations contained in paragraph numbered "47" of the Complaint, but admits that Plaintiff has paid the premiums for each Bond.

48.     Travelers denies the allegations contained in paragraph numbered "48" of the Complaint.

49.     Travelers denies the allegations contained in paragraph numbered "49" of the Complaint.

### AS AND FOR A RESPONSE TO THOSE ALLEGATIONS FOLLOWING PARAGRAPH NUMBER 49

The allegations set out in the "Wherefore" paragraph following paragraph number 49 constitute requests for various judicial actions as to which no response from Travelers is required.  To the extent that a response is required, Travelers denies that Plaintiff is entitled to any element of the relief sought, and Travelers further avers that it did not breach its contract(s) of insurance with Scottrade.

WHEREFORE, Defendant St. Paul Mercury Insurance Company, having fully answered the allegations in Count I, respectfully demands judgment dismissing Count I of Plaintiff's Complaint, with prejudice; and respectfully requests that the Court award Defendant the costs and disbursements of this action, and that the Court grant Defendant such other and further relief as the Court deems equitable, just and proper.

## AS AND FOR A RESPONSE TO THOSE ALLEGATIONS DENOMINATED
## "COUNT II – VEXATIOUS AND UNTIMELY REFUSAL TO PAY"

50.      Travelers repeats and realleges its responses to paragraphs numbered 1 through and including 49 as if each response was set out in full in this paragraph.

51.      Travelers denies the allegations contained in paragraph numbered "51" of the Complaint.

52.      Travelers denies the allegations contained in paragraph numbered "52" of the Complaint, excepts admits that Travelers properly conducted an investigation and review of the claim presented by Plaintiff, and that following its review and analysis of that portion of the information and documents which Travelers requested that Scottrade did provide, Travelers determined that it was not liable under the Bond(s) for Plaintiff's claim, and notified Plaintiff of that determination by letter dated September 14, 2009.

53.      Travelers denies the allegations contained in paragraph numbered "53", except admits that after Travelers properly conducted an investigation and review of the claim presented by Plaintiff, following its review and analysis of that portion of the information and documents which Travelers requested that Scottrade did provide, Travelers determined that it was not liable under the Bond(s) for Plaintiff's claim, and notified Plaintiff of that determination by letter dated September 14, 2009.

54.      The allegations set forth in paragraph numbered "54" of the Complaint constitute legal conclusions as to which no response is required.  To the extent a response is required, Travelers admits that Plaintiff has correctly quoted Section 375.420 RSMo, and further avers that Travelers properly denied Plaintiff's claim.

55.     Travelers denies the allegations contained in paragraph numbered "55" of the Complaint, except that Travelers denies knowledge or information sufficient to form a belief as to the truth of the allegation that Scottrade has retained counsel.

56.     With respect to the allegations set forth in paragraph numbered "56" of the Complaint, Travelers denies that its declination of the claim submitted by Plaintiff was either unreasonable or untimely, and denies that Plaintiff is entitled to the relief it states it is seeking in the balance of this paragraph, to the extent a response is necessary to such allegations.  Travelers further avers that its declination of this claim is both reasonable and timely.

### AS AND FOR A RESPONSE TO THOSE ALLEGATIONS FOLLOWING PARAGRAPH NUMBER 56

The allegations set out in the "Wherefore" paragraph following paragraph number 56 constitute requests for various judicial actions as to which no response from Travelers is required.  To the extent that a response is required, Travelers denies that Plaintiff is entitled to any element of the relief sought, and Travelers further avers that it properly and timely declined the claim presented by Scottrade, and denies any conduct entitling Scottrade to the relief sought here.

WHEREFORE, Defendant St. Paul Mercury Insurance Company, having fully answered the allegations in Count II, respectfully demands judgment dismissing Count II of Plaintiff's Complaint, with prejudice; and respectfully requests that the Court award Defendant the costs and disbursements of this action, and that the Court grant Defendant such other and further relief as the Court deems equitable, just and proper.

## AS AND FOR TRAVELERS' AFFIRMATIVE DEFENSES
## AND DEFENSES TO PLAINTIFF'S COMPLAINT

### AS AND FOR A 1st AFFIRMATIVE DEFENSE
("Computer Systems Fraud" Rider – Direct Loss  -- Not Shown)

57.    Travelers repeats and reiterates paragraph "15" hereof with the same force and

effect as if same were fully set forth at length herein.

58.    As described in Paragraph 15 of this Answer, the Computer Systems Fraud

Coverage of the Bond provides, in relevant part:

> The Underwriter, in consideration of an agreed premium, and subject to the
> Declarations, Insuring Agreements, General Agreements, Conditions and
> Limitations and other terms hereof, agrees to indemnify the Insured for:

> *       *       *

> Loss resulting *directly* from a fraudulent

> (1) entry of Electronic Data or Computer Program into, or

> (2) change of Electronic Data or Computer Program within

> any Computer System operated by the Insured, whether owned or
> leased; or any Computer System identified in the application for this
> bond; or a Computer System first used by the Insured during the Bond
> Period, as provided by General Agreement B of this bond; [Bond, as
> modified by Rider MEL0338 Ed. 12-01 (Amend Representation of
> Insured), and Rider SR6196 Adopted 12-93 (Computer Systems Fraud
> Insuring Agreement) (emphasis added)].

> *       *       *

59.    The claim submitted by Scottrade to Travelers failed to show that Scottrade

sustained a "direct" loss, as required by the "Computer Systems Fraud" Rider of the Bond.

60.    Accordingly, Plaintiff has failed to show a loss covered under Travelers' Bond.

<u>AS AND FOR A 2nd AFFIRMATIVE DEFENSE</u>
(Exclusion (v)- claimed)

61.     Conditions and Limitations, Exclusions, Section 2,  of the Bond provides, subject to the Bond's  Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders,  as relevant here:

**CONDITIONS AND LIMITATIONS**

\*   \*   \*

**EXCLUSIONS**

Section 2.  This bond does not cover:

\*   \*   \*

(v) indirect or consequential loss *of any nature*; (emphasis added).

62.     The claim submitted by Plaintiff to Travelers under the Bond demonstrates that the alleged loss claimed by Plaintiff was an indirect or consequential loss, in whole or in part.

63.     Even if Plaintiff's claimed loss was covered and not otherwise excluded under Travelers' Bond, which Travelers expressly denies, this claimed loss would be excluded by Exclusion (v) of the Bond.

64.     Accordingly, any coverage for the claim presented by Plaintiff would be excluded, in whole or in part, by Exclusion (v) of the Bond.

<u>AS AND FOR 3rd AFFIRMATIVE DEFENSE</u>
(Exclusion (i))

65.     Conditions and Limitations, Exclusions, Section 2,  of the Bond provides, subject to the Bond's  Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders,  in relevant part here:

**CONDITIONS AND LIMITATIONS**

16

\*   \*   \*

## EXCLUSIONS

Section 2.  This bond does not cover:

\*   \*   \*

(i) loss resulting directly or indirectly from transactions in a
customer's account, whether authorized or unauthorized, except
the unlawful withdrawal and conversion of Money, securities or
precious metals, directly from a customer's account by an
Employee provided such unlawful withdrawal and conversion is
covered under Insuring Agreement (A);

\*   \*   \*

66.     The claim submitted by Plaintiff to Travelers under the Bond demonstrates that the

alleged loss claimed by Plaintiff resulted "directly or indirectly from transactions in a customer's

account".

67.     The claim submitted to Travelers by Plaintiff is not one for "the unlawful

withdrawal and conversion of Money, securities or precious metals, directly from a customer's

account by an Employee" that was covered by Insuring Agreement (A) of the Bond.

68.     Accordingly, the exception to Exclusion (i) does not apply.

69.     Even if Plaintiff's claimed loss was covered and not otherwise excluded under

Travelers' Bond, which Travelers expressly denies, this claimed loss would be excluded by

Exclusion (i) of the Bond.

70.     Accordingly, any coverage for the claim presented by Plaintiff would be excluded,

in whole or in part, by Exclusion (i) of the Bond.

AS AND FOR A 4th AFFIRMATIVE DEFENSE
(Exclusion (s))

71.     Conditions and Limitations, Exclusions, Section 2,  of the Bond provides, subject to

the Bond's  Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations,

and Riders,  in relevant part here:

## CONDITIONS AND LIMITATIONS

\*   \*   \*

## EXCLUSIONS

Section 2.  This bond does not cover:

\*   \*   \*

(s) Potential income, including but not limited to interest and dividends,
not realized by the Insured or by any customer of the Insured.

\*   \*   \*

72.     Even if Plaintiff's claimed loss was covered and not otherwise excluded under

Travelers' Bond, which Travelers expressly denies, to the extent Scottrade seeks indemnification

for "potential income", this claimed loss would be excluded by Exclusion (s) of the Bond.

73.     Accordingly, any coverage for the claim presented by Plaintiff would be excluded,

in whole or in part, by Exclusion (s) of the Bond.

AS AND FOR A 5th AFFIRMATIVE DEFENSE
(Claims Expense)

74.     The Claims Expense Rider of the Bond provides, subject to the Bond's

Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders,

in relevant part here:

It is agreed that:

1.The attached bond is hereby amended by adding to it an additional Insuring Agreement as follows:

### CLAIMS EXPENSE

The Underwriter shall be liable for reasonable expenses, not to exceed **($) 100,000 DOLLARS** during the bond period, incurred by the Insured by reason of the Insured having retained, with the prior approval of the Underwriter, independent outside accountants or other non-legal experts to determine the amount and extent of a loss covered and paid under the bond. The Underwriter shall not be liable to reimburse the Insured for said expenses until payment for the covered loss is made. A **($)0** deductible shall apply to Claims Expense. [MEL 2043 Ed. 11-04]

\*   \*   \*

75.     Bond Conditions and Limitations, Exclusions, Section 2, as modified by the Claims Expense Rider [MEL 2043 Ed. 11-04] and the Audit Expense Coverage Rider [MEL0667 Ed. 10-02]  provides, subject to the Bonds' Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders,  that the Bond does not cover "all fees, costs and expenses incurred by the Insured: (1) in establishing the existence of or amount of loss covered under this bond . . . , or (2) as a party to any legal proceeding . . .".

76.     Even if Plaintiff's claimed loss was covered and not otherwise excluded under Travelers' Bond, which Travelers expressly denies, to the extent Plaintiff' is seeking "fees, costs and expenses" incurred in "establishing the existence of or amount of loss covered under this bond," except to the extent, if any, covered under the Claims Expense Insuring Agreement, such claim would be excluded by Exclusion (u) of the Bond, as modified.

19

<u>AS AND FOR A 6th AFFIRMATIVE DEFENSE</u>
("Computer Systems Fraud" Rider - Exclusion (A))

77.     The "Computer Systems Fraud" Rider of the Bond provides, subject to the Bond's

Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders,

as relevant here:

> 2. In addition to the Conditions and Limitations in the bond, the
> following, applicable to the Computer Systems Fraud Insuring
> Agreement, are added:

*   *   *

**EXCLUSIONS**

> (A) loss resulting directly or indirectly from the assumption of
> liability by the Insured by contract unless the liability arises from a
> loss covered by the Computer Systems Fraud Insuring Agreement
> and would be imposed on the Insured regardless of the existence of
> the contract:

*   *   *

78.     Even if Plaintiff's claimed loss was covered and not otherwise excluded under

Travelers' Bond, which Travelers expressly denies, to the extent Plaintiff seeks indemnification for

"loss resulting directly or indirectly from the assumption of liability by the Insured by contract", and

the exception to this exclusion does not apply, Plaintiff's claim is excluded, in whole or in part, by

Exclusion (A) of the "Computer Systems Fraud" Rider of the Bond.

<u>AS AND FOR A 7th AFFIRMATIVE DEFENSE</u>
("Computer Systems Fraud" Rider - Exclusion (E))

79.     Travelers repeats and reiterates paragraph "15" hereof with the same force and effect

as if same were fully set forth at length herein.

20

80.     The "Computer Systems Fraud" Rider of the Bond provides, subject to the Bond's Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders, as relevant here:

> 2.  In addition to the Conditions and Limitations in the bond, the following, applicable to the Computer Systems Fraud Insuring Agreement, are added:

> \*     \*     \*

> **EXCLUSIONS**

> \*     \*     \*

> (E) loss resulting directly or indirectly from the theft of confidential information.

81.     Even if Plaintiff's claimed loss was covered and not otherwise excluded under Travelers' Bond, which Travelers expressly denies, to the extent Plaintiff seeks indemnification for "loss resulting directly or indirectly from the theft of confidential information", Plaintiff's claim is excluded, in whole or in part, by  Exclusion (E) of the "Computer Systems Fraud" Rider of the Bond.


AS AND FOR AN 8th AFFIRMATIVE DEFENSE
(Discovery of Loss)

82.     Section 3 of the Conditions and Limitations of the Bond provides that:

> **DISCOVERY**

> Section 3.  This bond applies to loss discovered by the Insured during the Bond Period.  Discovery occurs when the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even thought the exact amount or details of loss may not then be known.

> Discovery also occurs when the Insured receives notice of an actual or potential claim in which it is alleged that the Insured is

21

liable to a third party under circumstances which, if true, would constitute a loss under this bond.

83.    The Bond, Conditions and Limitations, Termination, Section 12, provides in

relevant part:

> This bond terminates as an entirety upon occurrence of any of the following:
>
> \*   \*   \*
>
> (f) immediately upon expiration of the Bond Period as set forth in Item 2 of the Declarations.
>
> \*   \*   \*
>
> Termination of the bond as to any Insured terminates liability for any loss sustained by such Insured which is discovered after the effective date of such termination.

84.    Travelers issued:

(a)    Financial Institution Bond, Standard Form No. 14, Revised to October 14, 1987, Bond No. 491PB0727 to Scottrade, Inc, as Named Insured, with a Bond Period of November 1, 2005 to November 1, 2006 (the "2005-2006 Bond"). Item 6 of the Declarations of this bond provides: "Item 6. The Insured by acceptance of this bond gives notice to the Underwriter terminating or canceling prior bond(s) or policy(ies) No.(s)  NEW such termination or cancelation to be effective as of the time this bond becomes effective."

(b)    Financial Institution Bond, Standard Form No. 14, Revised to October 14, 1987, Bond No.  491PB0727 to Scottrade, Inc, as Named Insured, with a Bond Period of November 1, 2006 to November 1, 2007 (the "2006-2007 Bond").  Item 6 of the Declarations of this Bond provides: "Item 6. The Insured by acceptance of this bond gives notice to the Underwriter terminating or canceling prior bond(s) or policy(ies) No.(s) 491PB0727 (11/01/2005 to 11/01/2006) such termination or cancelation to be effective as of the time this bond becomes effective."; and

(c)    Financial Institution Bond, Standard Form No.14, Revised to October 14, 1987, Bond No. 485PB0540 to Scottrade, Inc, as Named Insured, with a Bond Period of November 1, 2007 to September 30, 2008 (the "2007-2008 Bond"). Item 6 of the Declarations of this bond provides: "Item 6. The Insured by acceptance of this bond gives notice to the Underwriter terminating or canceling prior bond(s) or policy(ies) No.(s) 491PB0727 (11/01/2006 to 11/01/2007) such termination or cancelation to be effective as of the time this bond becomes effective."

85.    If Scottrade "discovered" the loss claimed in its Proof of Loss, prior to November 1,

2005, then Travelers would not be liable to Scottrade for the claimed loss under the 2005-2006,

2006-2007, or 2007-2008 Bonds, by reason of the foregoing provisions.

22

86.     If Scottrade "discovered" the loss claimed in its Proof of Loss, after November 1, 2005, and before November 1, 2006, then Travelers would not be liable to Scottrade for the claimed loss under the 2006-2007, or 2007-2008 Bonds, by reason of the foregoing provisions, and any liability Travelers might have under the 2005-2006 Bond, which Travelers expressly denies, would be limited, in whole or in part, by that Bond's  Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders.

87.     If Scottrade "discovered" the loss claimed in its Proof of Loss, after November 1, 2006, and before November 1, 2007, then Travelers would not be liable to Scottrade for the claimed loss under the 2005-2006, or 2007-2008 Bonds, by reason of the foregoing provisions, and any liability Travelers might have under the 2006-2007 Bond, which Travelers expressly denies, would be limited, in whole or in part, by that Bond's  Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders.

88.     Since Scottrade has asserted that it "discovered" the alleged loss prior to November 1, 2007, Travelers is not liable to Scottrade for the claimed loss under the 2007-2008 Bond, by reason of the foregoing provisions.


AS AND FOR A 9th AFFIRMATIVE DEFENSE
(Duties upon Discovery - Notice)

89.     Travelers repeats and realleges paragraph "82" hereof with the same force and effect as if same were fully set forth at length herein.

90.     Conditions and Limitations, Notice/Proof - Legal Proceedings Against Underwriter, Section 5, of the Bond provides, subject to the Bond's  Declarations, Insuring

Agreements,  General Agreements, Conditions and Limitations, and Riders,  in relevant part here:

## CONDITIONS AND LIMITATIONS

\*   \*   \*

### NOTICE/PROOF – LEGAL PROCEEDINGS AGAINST UNDERWRITER

Section 5.

(a) At the earliest practicable moment, not to exceed 60 days, after discovery of loss, the Insured shall give the Underwriter notice thereof. The notice requirements therein shall not apply to losses of $25,000 or less.

(b) Within 6 months after such discovery, the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars.

\*   \*   \*

(d) Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss.

\*   \*   \*

[Bond, as amended by Rider MEL2586 Ed. 3/2005 (AMEND NOTICE/PROOF – LEGAL PROCEEDINGS AGAINST UNDERWRITER – For use with Bond Form 14)]

91.    Even if Plaintiff's claimed loss was covered and not otherwise excluded under Travelers' Bond, which Travelers expressly denies, if Plaintiff failed to give notice to Travelers as required by Conditions and Limitations Section 5 (a), and Travelers was prejudiced by this failure, then any liability Travelers had to Scottrade would be exonerated by reason of Plaintiff's breach of this condition.

92.    Accordingly, Plaintiff's complaint should be dismissed.

24

## AS AND FOR A 10th AFFIRMATIVE DEFENSE
### (Duties upon Discovery  - Proof of Loss)

93.     Travelers repeats and realleges paragraphs "82" and "90" hereof with the same

force and effect as if same were fully set forth at length herein.

94.     Even if Plaintiff's claimed loss was covered and not otherwise excluded under

Travelers' Bond, which Travelers expressly denies, if Plaintiff failed to furnish Travelers with a

Proof of Loss within six months of Plaintiff's discovery of the claimed loss, as required by

Conditions and Limitations Section 5 (b), and Travelers was prejudiced thereby, then any liability

Travelers had to Scottrade would be exonerated by reason of Plaintiff's breach of this condition.

## AS AND FOR A 11th AFFIRMATIVE DEFENSE
### (Suit Limitation)

95.     Travelers repeats and realleges paragraphs "82" and "90" hereof with the same

force and effect as if same were fully set forth at length herein.

96.     Travelers agreed with Scottrade on or about September 26, 2008, to a tolling

agreement on the suit limitations period to expire at the later of January 31, 2009, or 120 days

after receipt of Travelers' final written coverage determination.

97.     Even if Plaintiff's claimed loss was covered and not otherwise excluded under

Travelers' Bond, which Travelers expressly denies, if Plaintiff failed to timely sue on this claim,

as required by Conditions and Limitations Section 5 (d), subject to the extent modified by the

agreement referenced in paragraph "96" above, then any liability Travelers had to Scottrade

would be exonerated by reason of Plaintiff's breach of this condition.

## AS AND FOR A 12th AFFIRMATIVE DEFENSE
### (Duty to Cooperate)

98.    Conditions and Limitations, Assignment - Subrogation - Recovery - Cooperation, Section 7, of the Bond provides, subject to the Bond's  Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders,  in relevant part here:

## CONDITIONS AND LIMITATIONS

\*    \*    \*

## ASSIGNMENT – SUBROGATION – RECOVERY - COOPERATION

Section 7.

\*    \*    \*

(d) Upon the Underwriter's request and at reasonable times and
places designated by the Underwriter the Insured shall
(1) submit to examination by the Underwriter and subscribe
to the same under oath; and
(2) produce for the Underwriter's examination all pertinent
records; and
(3) cooperate with the Underwriter in all matters pertaining to
the loss.

99.    To the extent that Plaintiff failed to cooperate in Travelers' investigation of the claim submitted by Plaintiff upon the Bond, Plaintiff breached the foregoing condition.

100.    By reason of such breach, and prejudice, if any, accruing to Travelers as a result of such breach, Travelers would have no liability to Plaintiff for the claim presented.

## AS AND FOR A 13th AFFIRMATIVE DEFENSE
### (Limits of Liability)

101.    Conditions and Limitations, Single Loss Limit of Liability, Section 4. of the Bond provides, subject to the Bond's Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders,  in relevant part here:

26

## CONDITIONS AND LIMITATIONS

\*        \*        \*

## LIMIT OF LIABILITY

Section 4.

\*         \*      \*

### Single Loss Limit of Liability

Subject to the Aggregate Limit of Liability, the
Underwriter's liability for each Single Loss shall not
exceed the applicable Single Loss Limit of Liability
shown in Item 4 of the Declarations.

102.    The Declarations of the Bond, Item 4., provides a Single Loss Limit of Liability of

$10,000,000 (Ten Million Dollars US) for Computer Systems Fraud.

103.    By reason of the foregoing provision, if Travelers was liable to Plaintiff for the claim

presented, which Travelers expressly denies, any such liability  would be limited by the Single

Loss Limit of Liability of $10,000,000, and otherwise excluded or limited, in whole or in part, by

the Bond's Declarations, Insuring Agreements,  General Agreements, Conditions and

Limitations, and Riders.

### AS AND FOR A 14th AFFIRMATIVE DEFENSE
(Deductible)

104.    Conditions and Limitations, Deductible Amount, Section 11, of the Bond

provides, subject to the Bond's Declarations, Insuring Agreements,  General Agreements,

Conditions and Limitations, and Riders,  in relevant part here:

## CONDITIONS AND LIMITATIONS

\*      \*      \*

## DEDUCTIBLE AMOUNT

27

Section 11.  The Underwriter shall be liable hereunder only for the amount by which any single loss, as defined in Section 4, exceeds the Single Loss Deductible amount for the Insuring Agreement or Coverage applicable to such loss, subject to the Aggregate Limit of Liability and the applicable Single Loss Limit of Liability.

\*   \*   \*

105.    The Declarations of the Bond, Item 4., provides a Deductible of $250,000 for the Computer Systems Fraud Insuring Agreement.

106.    Even if Travelers was liable to Plaintiff for the claim presented, which Travelers expressly denies, any such liability  would be limited by the Deductible of $250,000, and otherwise excluded or limited, in whole or in part, by the Bond's Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders.

## AS AND FOR A 15th AFFIRMATIVE DEFENSE
### (Single Loss)

107.    Travelers repeats and realleges paragraphs "101," "102," "104" and "105" hereof with the same force and effect as if same were fully set forth at length herein.

108.    Bond Conditions and Limitations, Limit of Liability, Section 4, further provides, subject as well to the terms of the Bond:

## CONDITIONS AND LIMITATIONS

\*   \*   \*

## LIMIT OF LIABILITY

Section 4.

\*   \*   \*

Single Loss Defined

28

Single Loss means all covered loss, including court costs and attorneys' fees incurred by the Underwriter under General Agreement F, resulting from

(a) any one act or series of related acts of burglary, robbery or attempt thereat, in which no Employee is implicated, or

(b) any one act or series of related unintentional or negligent acts or omissions on the part of any person (whether an Employee or not) resulting in damage to or destruction or misplacement of Property, or

(c) all acts or omissions other than those specified in (a) and (b) preceding, caused by any person (whether an Employee or not) or in which such person is implicated, or

(d) any one casualty or event not specified in (a), (b) or (c) preceding.

109.     The "Computer Systems Fraud" Rider also provides that:

### SERIES OF LOSSES

All loss or series of losses involving the fraudulent acts of one individual, or involving fraudulent acts in which one individual is implicated, whether or not that individual is specifically identified, shall be treated as a Single Loss and subject to the Single Loss Limit of Liability. A series of losses involving unidentified individuals but arising from the same method of operation shall be deemed to involve the same individual and in that event shall be treated as a Single Loss and subject to the Single Loss Liability.

110.   If the claimed loss presented by Plaintiff to Travelers constitutes a "Single Loss" as defined by the bond, then any liability Travelers may have to the Plaintiff would be limited by the Limit of Liability and Deductible provisions set forth above, subject to the Bond's Declarations, Insuring Agreements,  General Agreements, Conditions and Limitations, and Riders.

111.   If the claimed loss presented by Plaintiff to Travelers does not constitute a "Single Loss" as defined by the Bond, then, with respect to each loss claimed under the Bond, Plaintiff would have to show that such loss is covered by the Bond, in an amount in excess of the

29

Deductible, and limited by the Single Loss Limit of Liability, and subject to the Aggregate Limit of Liability under the Bond, as well as the Bond's Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders.

AS AND FOR A 16th AFFIRMATIVE DEFENSE
(Other Insurance)

112.    Conditions and Limitations, Other Insurance or Indemnity, Section 9, of the Bond provides, subject to the Bond's Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders, in relevant part here:

**CONDITIONS AND LIMITATIONS**

*   *   *

**OTHER INSURANCE OR INDEMNITY**

> Section 9. Coverage afforded hereunder shall apply only as excess over any valid and collectible insurance or indemnity obtained by the Insured, or by one other than the Insured on Property subject to exclusion (q) or by a Transportation Company, or by another entity on whose premises the loss occurred or which employed the person causing the loss or the messenger conveying the Property involved.

113.    Even if Travelers was liable to Plaintiff for the claim presented, which Travelers expressly denies, any such liability would be limited, in whole or in part, by the application of the foregoing Condition.

AS AND FOR A 17th   AFFIRMATIVE DEFENSE
(Plaintiffs' Claims Are Barred by the Bond)

114.    Plaintiff is barred from pursuing the claims set forth in the Complaint by reason of the Bond's Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders.

30

## AS AND FOR A 18th AFFIRMATIVE DEFENSE
### (Plaintiffs' Claims Fall Outside or Are Defeated by the Bond)

115.    Plaintiff's claims fall outside of, or are defeated by, the Bond's Declarations, Insuring Agreements, General Agreements, Conditions and Limitations, and Riders.

## AS AND FOR A 19th AFFIRMATIVE DEFENSE
### (Defendant Reserves its Right to Plead Additional Affirmative Defenses)

116.    Travelers reserves the right to assert such additional defenses as they are ascertained through discovery.

## AS AND FOR A 20th AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

117.    Plaintiff's Complaint, including Counts I and II thereof, fails to state a claim upon which relief can be granted, and therefore, pursuant to Fed. R. Civ. P. 12 (b)(6), should be dismissed.

## AS AND FOR A 21st AFFIRMATIVE DEFENSE
### ("Computer Systems Fraud" Rider – Direct Loss  -- Not Sustained)

118.    Travelers repeats and reiterates paragraphs 15 and 58 hereof with the same force and effect as if same were fully set forth at length herein.

119.    Scottrade has not sustained a "direct" loss as required under Travelers' Bond.

120.    Accordingly, the alleged loss Scottrade sues upon in this action is not covered under Travelers' Bond.

## AS AND FOR A 22nd AFFIRMATIVE DEFENSE
### (Exclusion (v) – sued upon)

121.   Travelers repeats and reiterates paragraph 61 hereof with the same force and effect as if same were fully set forth at length herein.

122.   The alleged loss Scottrade sues upon in this action is an indirect or consequential loss, in whole or in part.

123.   Even if Plaintiff's alleged loss sued upon in this action was covered and not otherwise excluded under Travelers' Bond, which Travelers expressly denies, this alleged loss would be excluded by Exclusion (v) of the Bond.

124.   Accordingly, any coverage for the claim sued upon by Plaintiff in this action would be excluded, in whole or in part, by Exclusion (v) of the Bond.

## AS AND FOR A 23rd AFFIRMATIVE DEFENSE
### (Avoidable Consequences)

125.   Plaintiff's claims are barred, in whole or in part, by reason of the doctrine of Avoidable Consequences.

## AS AND FOR A 24th AFFIRMATIVE DEFENSE
### (Scottrade Deficiencies)

126.   Scottrade's alleged losses, from and after the time(s) that Scottrade actually "discovered", as defined by the Bonds, the facts giving rise to the claimed loss, gave notice of its alleged loss to Travelers, and subsequently, were increased by reason of Scottrade's failure to comply with its duties to maintain or implement security, surveillance, and like preventive and remedial measures in the operation of its online securities trading platforms.

127.  Accordingly, Scottrade's claimed losses should be reduced, in whole or in part.

### AS AND FOR A 25th AFFIRMATIVE DEFENSE
(Voluntary Payment)

128.  Some of all of the losses alleged by Scottrade were occasioned by Scottrade's own voluntary payments to its customers, and were not losses for which there is coverage under the bonds issued by Travelers to Scottrade.

129.  To the extent that Scottrade paid as a volunteer, Travelers is not liable to Scottrade under its Bonds.

### AS AND FOR A 26th AFFIRMATIVE DEFENSE
(Travelers' Good Faith)

130.  Travelers, in investigating and now defending Scottrade's claim, have at all times acted reasonably and in good faith.

131.  Accordingly, Count II of Plaintiff's complaint should be dismissed.

### AS AND FOR A 27th AFFIRMATIVE DEFENSE
(Travelers' Good Faith)

132.  In addition or in the alternative to its other affirmative defenses, Travelers states: Travelers, an insurer, acting in good faith, has reasonable or probable cause for belief in its position and therefore is not subject to vexatious refusal or other penalties for so proceeding.

**WHEREFORE**, Defendant St. Paul Mercury Insurance Company demands judgment dismissing Plaintiff's complaint in its entirety, with prejudice; and respectfully requests that the Court award Defendant the costs and disbursements of this action, and that the Court grant Defendant such other and further relief as this Court deems just, proper, and equitable.

Dated: St. Louis, Missouri
      November 23, 2010

                            Respectfully submitted,

                            NIEMANN ROURKE, LLC

By:   /s/ John W. Rourke
        John W. Rourke, # 4216
        Email: Jrourke@niemannrourke.com
        NIEMANN ROURKE, LLC
        1650 Des Peres Road, Suite 150
        St. Louis, Missouri 63131
        Phone: (314) 822-7171
        Fax:    (314) 822-7177

        Arthur N. Lambert *admitted pro hac vice*
        Daniel W. White *admitted pro hac vice*
        Victor Kao *admitted pro hac vice*
        Email: ALambert@flwwlaw.com
               DWhite@flwlaw.com
               VKao@flwlaw.com

        FRENKEL LAMBERT WEISS WEISMAN
         & GORDON, LLP
        One Whitehall Street 20th Floor
        New York NY 10004
        Phone: (212) 344-3100
        Fax: (212) 419-1283
        Attorneys for Defendant
        The St. Paul Mercury Insurance Company

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and accurate copy of the foregoing was served on counsel of record by electronic mail and by operation of the Court's electronic filing system on this 23rd day of November 2010.

               /s/  John W. Rourke