UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTTRADE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV1855SNLJ |
| ) | |
| THE ST. PAUL MERCURY INS. CO., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff has filed this two-count state law diversity action alleging that defendant has improperly denied its claim for losses sustained in connection with fraudulent hacking activity affecting approximately 1400 brokerage accounts. Plaintiff contends that the losses sustained are covered by the Computer Systems Fraud Rider to a financial institution bond sold to the plaintiff by defendant. Defendant disputes coverage for the subject claim. Plaintiff is seeking damages pursuant to state law claims for breach of contract and vexatious and untimely refusal to pay. This matter is before the plaintiff's motion to compel [33] and responsive pleadings. The matter is now ripe for disposition.

The parties are engaged in a significant dispute regarding the scope of discovery that plaintiff continues to believe it is entitled to receive from defendant. In response to extensive discovery interrogatories and production requests by plaintiff, defendant has responded to all interrogatories by answering same or objecting to same, and produced voluminous documents, including but not limited to, portions of the plaintiff's claim file and the underwriting file(s) for the subject bond. Due to confidentiality concerns, the parties have negotiated an confidentiality order and stipulation pursuant to which defendant has produced approximately 5000 pages of

documents from its records. As to some requested documents, defendant has provided plaintiff a "privilege log" listing approximated thirty (30) pages of documents in which defendant has asserts attorney-client privilege, protection under the work product doctrine, or said document contains proprietary/confidential information relating to defendant's business.

Plaintiff contends that defendant cannot refuse to answer interrogatories based upon generalized objections, that it is entitled to its entire claims file, it is entitled to defendant's files relating to similar claims and/or asserted losses, all documents relating to the creation and all versions of the form Computer Systems Fraud Rider/Endorsement used by defendant, and all documents relating to defendant's business insurance practices. Plaintiff avers that defendant's privilege log is inadequate to sustain the claimed privilege protections, and that "proprietary/confidential documents" are discoverable pursuant to the confidentiality order. Specifically, plaintiff seeks an order compelling:

> 1) defendant's full and complete answers to Interrogatories Nos. 1, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 17, 18, 19, 20, 21, 22, and produce all documents being withheld in reliance on objections, including documents responsive to Requests for Production Nos. 4, 5, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 21, 24, 25, 26, 27, 29, 32, 35, 36, 37, and 38;
>
> 2) defendant's full and complete answers to Interrogatories Nos. 12 and 13, as well as Document Requests 35, 36, and 37;
>
> 3) defendant's production of all documents listed on defendant's privilege log other than the January 21, 2010 email authored by Tracey Santor and the Rule 17 g-1 report.

Defendant contends that it has answered all interrogatories and produced all documents that are not privileged and are relevant to the issues in this case; namely whether defendant properly denied plaintiff's particular claim, and whether defendant acted properly in the investigation and determination of the subject claim. Defendant contends that "[n]othing after the September 24, 2009 declination is at issue here." Defendant avers that it made not only

"generalized objections" but followed up such objections with objections specific to every response it made. It further avers that even when objecting to the wording and possible interpretation of the allegedly disputed interrogatories and production requests, it has responded "fully" to the interrogatories and provide documents responsive to the production request. Defendant further avers that its privilege log is sufficient to support its assertions of the privileges. Finally, defendant contends that the documents plaintiff seeks regarding the creation and versions of the subject Computer Systems Fraud Rider/Endorsement by the Surety and Fidelity Association of America (SFAA) are not in its files and should be sought from the SFAA, not defendant.

The Court will first review general principles of federal law relating to the privileges and protections asserted in the instant matter, and the applicability of these general principles to the issues raised by this discovery dispute.

As an initial matter, the work product doctrine, is not a substantive privilege, but rather a matter of procedural law, and thus, governed by federal law. Pepsico v. Baird, Kurtz & Dobson, L.L.P., 305 F.3d. 813, 817 (8th Cir. 2002); Travelers Property Casualty Company of America v. National Union Ins. Co. of Pittsburgh, PA., 250 F.R.D. 421,424 (W.D.Mo. 2008); The Medical Protective Co. v. Bubenik, D.M.D., 2007 WL 3026939, *1 (E.D.Mo. October 15, 2007).[1] Rule 26(b)(3)(A) Fed.R.Civ.P. protects "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) . . ." However, such materials may still be discoverable if the party seeking the documents "shows that it has substantial need

---

[1] The Court will cite to unpublished opinions, generally district court opinions, that it considers instructive in addressing the issues raised by the instant motion and responsive pleadings.

3

for the materials to prepare its case and cannot, without due hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A)(ii). In summary, the work product doctrine affords protection for materials prepared in anticipation of litigation but allows discovery of same if the party seeking discovery can show substantial need and undue hardship in obtaining the materials elsewhere. Pepsico, at 817. Furthermore, Rule 26 cautions that a court (if ordering disclosure of such materials) "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Rule 26(3)(B). Thus, federal law recognizes two (2) kinds of work product: ordinary work product which includes raw factual information; and opinion work product which includes counsel's mental impressions, conclusions, opinions or legal theories. Baker v. General Motors, 209 F.3d. 1051, 1054 (8th Cir. 2000). While ordinary work product is discoverable upon a showing of substantial need and inability to procure the protected documents from another source, opinion work product "enjoys almost absolute immunity" and is generally only discoverable in "very rare and extraordinary circumstances". Id., at 1054.

Finally, Rule 26 places certain requirements upon the party claiming privilege protection:

> "(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Rule 26(b)(5)(A); *see also*, Folk v. State Farm Mutual Automobile Ins. Co., 2010 WL 3620477, *1 (E.D.Mo. September 9, 2010); McConnell v. Farmers Ins. Co., 2008 WL 510392, *1 (W.D.Mo. February 25, 2008). This is generally done via a "privilege log".

4

As for attorney-client privilege, in federal court the privilege is ordinarily a question of federal common law. However, in diversity cases wherein a claim or defense is governed by state law, state privilege law is applicable. *See*, Rule 503 Fed.Rule of Evidence; *see*, Baker v. GM, at 1053; Ayers Oil Co. v. American Business Brokers, Inc., 2009 WL 4725297, *1 (E.D.Mo. December 2, 2009) In the instant lawsuit, the cause of action is predicated on state law claims of breach of contract and vexatious refusal to pay; thus, Missouri substantive law on attorney-client privilege governs.

In Missouri, the General Assembly has statutorily enacted the attorney-client privilege. §491.060(3) provides that certain persons are incompetent to testify, including

> "(3) An attorney, concerning any communication made to the attorney by such attorney's client, in that relation, or such attorney's advice thereon, without consent of such client."

*See*, Ayers Oil, at *1. Missouri has adopted the common law doctrine regarding the privilege.

> "The attorney-client privilege prohibits `the discovery of confidential communications, oral or written, between an attorney and his client with reference to . . . litigation pending or contemplated.' To be privileged, the purpose of the communication between an attorney and client must be to secure legal advice."

Ratcliff v. Sprint Missouri, Inc., 261 S.W.3d. 534, 546 (Mo.App. 2008)(internal citations omitted); *see also*, Ayers v. American Business Brokers, at *1; Amica Mutual Ins. Co. v. Gary Willard, et. al., 2009 WL 578381, *1 (E.D.Mo. March 5, 2009). Missouri recognizes that "[t]here is a societal need for persons to be able to employ and consult with persons trained in the law for advice and guidance as to legal matters . . . confidentiality of the communications between client and attorney is essential for such relationships to be fostered and to be effective." State ex. rel. Great American Ins. Co. v. Smith, 574 S.W.2d. 379, 383 (Mo. 1978). The relationship between and attorney and his/her client is sacrosanct.

5

> "The nature and complexity of our present system of justice and
> the relationships among people and between people and their
> government make the preservation and protection of the attorney-
> client privilege even more essential. If this is to be accomplished,
> when one undertakes to confer in confidence with an attorney whom
> he employs in connection with a particular matter at hand, it is vital
> that all of what the client says to the lawyer and what the lawyer says
> to the client to be treated as confidential and protected by the attorney-
> client privilege. This is what a client expects."

Smith, 574 S.W.2d. at 383. Missouri recognizes an all-encompassing application of the attorney-client privilege.

> "When a client goes to an attorney and asks him to represent him
> on a claim which he believes he has against someone or which is being
> asserted against him, even if he as yet has no knowledge or information
> about the claim, subsequent communications by the attorney to the
> client should be privileged. Some of the advice given by the attorney
> may be based on information obtained from sources other than the
> client. Some of what the attorney says will not actually be advice as
> to a course of conduct to be followed. Part may be analysis of what is
> known to date of the situation. Part may be a discussion of additional
> avenues to be pursued. Part may be keeping the client advised of things
> done or opinions formed to date. All of these communication, not just
> the advice, are essential elements of attorney-client consultation. All
> should be protected."

Smith, 574 S.W.2d. at 384-85; *see*, Ratcliff, at 547 (the attorney-client privilege covers all documents prepared not only by the attorney but documents prepared by an employee at direction of employer for the purpose of obtaining legal advice or for use in prospective or pending litigation).

Given these legal principles, the Court has carefully reviewed the parties' pleadings, and the submitted disputed discovery and responses.

Firstly, the Court finds that the defendant's responses were adequate in most instances. The Court concurs that "[b]are assertions that the discovery requested is overly broad, unduly burdensome, oppressive, or irrelevant are ordinarily insufficient to bar production." The

6

Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D.Mo. July 27, 2010). However, in most instances, the defendant supplemented the general objections with objections specific to the discovery request at hand. As regards the disputed discovery, the issue is not whether a specific objection was made but rather if the specific objection is sufficient to bar a response or production.

Secondly, this Court disagrees with the plaintiff that Grewell v. State Farm Mut. Automobile Ins. Co., *supra*, requires the disclosure of that part of plaintiff's claim file generated after the parties became adversarial. Grewell did not address that issue, and in fact, the request for disclosure in Grewell involved contents of the claim file that were prepared before the parties became adversarial. Grewell, 102 S.W.3d at 34-35. In particular, the contents at issue in Grewell included the defendant insurance company's assessment of fault arising from an automobile accident involving their insured -- the plaintiff -- which was made before the relations between the insurer and insured broke off into litigation between them. Id. The Supreme Court simply arrived at the unremarkable conclusion that an insured's claims file maintained by the insurer is not materially different than a client's file maintained by the attorney for the client, and that just as a client's files belong to the client and not to the attorney representing the client, so too the insured is entitled to "free and open access" to the insurer's claims file. Id., at 36-37.

It is a different situation altogether, however, when the relationship between the insurer and insured breaks down because the insured denies coverage, and at that point, the insured can no longer be said to be working on behalf of the insured. Instead the insurer and insured are in adversarial positions, and to the extent the insured continues to maintain a claim file for the insured's case, any additions to the file should be subject to attorney-client and work-product

privileges in favor of the insurer. As courts have aptly observed, "[a]n insurer's decision to decline coverage is typically the point at which the ordinary course of business ends and the anticipation of litigation begins. Bubenik, at *3, quoting Tudor Insurance Co. v. McKenna Associates, 2003 WL 21488058, *3 (S.D.N.Y. 2003).

 Here, there is no doubt that when the claim was denied on September 24, 2009 the parties became adversarial. In fact, the prospect of litigation had been looming since September 26, 2008 when the parties entered into a "tolling agreement" in which plaintiff was granted a certain amount of time to file a lawsuit after a final coverage determination. Furthermore, prior to September 24, 2009, while the claim was being investigated, plaintiff had already hired outside counsel. The retention of outside counsel in and of itself is not dispositive of when litigation is anticipated, but this fact coupled with the "tolling agreement" indicates to this Court that plaintiff had every intention to challenge a denial of coverage, and in fact did so approximately six (6) weeks later. Thus, the Court finds that any documents generated by defendant, relating to the coverage matter, after the denial of the plaintiff's claim on September 24, 2009 are protected by the work-product doctrine. *See*, McConnell, *supra.*; Bubenik, *supra.*

 As for the assertion of attorney-client privilege for certain documents[2], the Court agrees that defendant has failed to carry its burden except as to Document STP CL 0000164. However, the remaining documents which assert attorney-client privilege also assert work product

---

[2]There are six (6) documents listed on the privilege log which assert attorney-client privilege. Of these 6 documents, it appears that plaintiff concedes the attorney-client privilege as to Document STP UW 000499 - STP UW 000503; and further appears to recognize the possibility of attorney-client privilege as to Document STP CL 0000164. Plaintiff disputes the applicability of the attorney-client privilege as to Documents STP CL 0000134, STP CL 0000161, and STP CL 0000841. It is unclear to the Court the plaintiff's position as to Document STP UW 000504.

8

protection. Since these documents were generated after September 24, 2009, and relate in some manner to the litigation[3], the documents are protected by the work product doctrine.

The Court agrees that the assertion that production of documents would be "unduly burdensome" especially due to defendant's own inadequacies in its data retrieval system is in and of itself insufficient to bar production. However, the burden of producing documents must be balanced with the relevancy of such documents. The Court is not going to allow extensive voluminous discovery requiring unreasonable amount of manhours searching for these documents if such documents are not relevant to the issues raised by this lawsuit. This lawsuit involves the denial of a claim of coverage under a specific type of policy with a specific type of bond. It appears to the Court that limiting the production of documents related to similar claims made against policies issued by St. Paul companies involving a Form 14 Financial Institution Bond and Computer Systems Fraud Rider would provide relevant information to the plaintiff, as well as minimize the burden of production on the defendant.

As for the documents listed on the privilege log as containing "proprietary/confidential information", the Court has carefully reviewed the relevant pleadings, including the affidavit of John Hahn, Second Vice-President at Travelers Bond and Financial Products (Document #45-3). These documents contain highly sensitive material regarding the core of the defendant's business operations. They pertain to marketing strategies and future new business considerations. This type of information, at this point in time, appears to be of marginal relevance, if at all, to the particular circumstances of this case. Even in light of the confidentiality order, the Court

---

[3]The Court notes that these documents not only refer to "litigation" in the notation, but were generated the day after, or shortly thereafter, the day plaintiff filed this lawsuit.

believes that the prejudice to the defendant, as to most of these documents, far outweighs the potential benefits of producing such discovery.

Finally, the Court is perplexed by the plaintiff's continuing pressure on defendant to produce documents pertaining to the drafting history of the subject Rider by the Surety and Fidelity Association of America (SFAA). There is no dispute that the SFAA is an entity distinct and independent of the defendant. Defendant has produced documents it has in its possession regarding the drafting history of the Rider. Plaintiff has failed to provide any reason why it cannot obtain any other SFAA-related documents from SFAA directly.

In light of the above-referenced legal principles, the Court makes the following findings and conclusions:

> 1) The defendant's responses to Interrogatories 1, 3, 7, 8, 9, 10, 11, 15, 17, 18, 19, 20, 21, and 22 are deemed sufficient and the plaintiff's motion compel will be denied as to these Interrogatories.
>
> 2) The defendant's responses to Production Requests 4, 5, 11, 14, 15, 16, 18, 25, 26, 27, 29, 34, 36, 37, and 38 are deemed sufficient and the plaintiff's motion will be denied as to these Production Requests.
>
> 3) As to Interrogatory 5, plaintiff's motion to compel will be granted and defendant shall answer fully and completely said Interrogatory.
>
> 4) As to Interrogatory 6, plaintiff's motion to compel will be granted and defendant shall answer fully and completely said Interrogatory.
>
> 5) As to Interrogatory 12, plaintiff's motion to compel will be granted in part and denied in part. Defendant shall fully and completely answer said Interrogatory as to other claims received by St. Paul Mercury Ins. Co. and/or St. Paul Fire and Marine Ins. Co. regarding coverage under a fidelity bond with a Computer Systems Fraud Rider/Endorsement policy within five (5) years preceding the date of the filing of the complaint in the instant lawsuit.
>
> 6) As to Interrogatory 13, plaintiff's motion to compel will be granted in part and denied in part. Defendant shall fully and completely answer said Interrogatory as to other actual lawsuits or arbitration proceedings involving St. Paul Mercury Ins. Co. and/or St. Paul Fire and Marine Ins.Co.

regarding coverage under a fidelity bond with a Computer Systems Fraud Rider/Endorsement policy within five (5) years preceding the date of the filing of the complaint in the instant lawsuit.

7) As to Interrogatories 12 and 13, defendant shall provide the name of the claimant/insured, the date of litigation or arbitration proceeding, the venue of the legal proceeding, and general nature of the litigation or arbitrate claim. This information may be provided subject to the confidentiality order.

8) As to Production Requests 7 and 8, plaintiff's motion shall be granted in part and denied in part. Defendant shall produce non-privileged documents generated prior to date of denial of coverage.

9) As to Production Requests 9 and 10, plaintiff's motion shall be granted in part and denied in part. Defendant shall produce non-privileged documents generated prior to date of denial of coverage.

10) As to Production Request 17, plaintiff's motion shall be granted in so far that defendant shall produce any actuarial study in its possession responsive to this Request under the provisions of the confidentiality order.

11) As to Production Request 21, plaintiff's motion shall be granted in so far as defendant shall produce non-privileged documents responsive to this Request under the provisions of the confidentiality order.

12) As to Production Request 24, plaintiff's motion shall be granted in so far as defendant shall produce any non-privileged documents generated by Ronald Mund prior to the date of denial of plaintiff's claim regarding the Link Analysis under the provisions of the confidentiality order.

13) As to Production Request 32, plaintiff's motion shall be granted in so far as defendant shall produce any versions of the form Computer Systems Fraud Rider/Endorsement used by Travelers, St. Paul Mercury Ins. Co., and/or St. Paul Fire and Marine Ins. Co. from 2005 to date of denial of plaintiff's claim of coverage in this lawsuit; and under the provisions of confidentiality order.

14) As to Production Request 35, plaintiff's motion shall be granted in so far as defendant shall produce all versions, including drafts, of the Computer Systems Fraud Rider/Endorsement used in policies containing a fidelity bond and issued under the same circumstances as present in the instant lawsuit.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel [33] be and is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT FINALLY ORDERED** that defendant shall tender its additional discovery responses, as ordered above, on or before February 28, 2011. Furthermore, each party shall bear their own respective fees and costs in this matter.

Dated this  15th   day of February, 2011.

_____
UNITED STATES DISTRICT JUDGE